# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GARY E. THORPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-411-SLR |
| | ) |
| MICHAEL LITTLE, et al., | ) |
| | ) |
| Defendants. | ) |

Gary E. Thorpe. James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

## MEMORANDUM OPINION

Dated: August 18, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Gary E. Thorpe ("plaintiff"), a pretrial detainee at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, who proceeds pro se and has been granted in forma pauperis status, filed this complaint alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 , violations of the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.*, the Rehabilitation Act, 42 U.S.C. § 12133 and 29 U.S.C. § 794(a), the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, the Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C. § 1997e, and the Restatement (Second) of Torts, as well as supplemental State law claims. He seeks compensatory and punitive damages, and injunctive relief. (D.I. 3) In addition, plaintiff filed a motion to show cause and a motion for transfer to a different institution. (D.I. 5, 9) The court proceeds to screen the case pursuant to 28 U.S.C. § 1915 and § 1915A. For the reasons that follow, plaintiff will be allowed to proceed with the Fourth Amendment claims, an excessive force claim, and medical needs sarcoidosis claims and the court will dismiss all other claims as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A. In addition, the court will deny plaintiff's motions.

## II. STANDARD OF REVIEW

The court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress

-2-

from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of

28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. See Ashcroft v. Iqbal, \_\_U.S.\_\_, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." Id. at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. Id. The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[1] Id. at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. Id. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[1]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

## III. DISCUSSION

The complaint, prepared and signed by inmate James Arthur Biggins, contains numerous counts.[2] The complaint alleges: (1) denial of access to the courts; (2) discrimination based upon pretrial detainee status in violation of the Equal Protection Clause; (3) deliberate indifference to a serious medical need and denial of eyeglasses; (4) unconstitutional punishment while awaiting trial; and (5) unreasonable search and seizure in violation of the Fourth Amendment.

Plaintiff invokes a number of statutes in the first paragraph of the complaint, most notably the Americans with Disabilities Act and the Rehabilitation Act. There are no allegations that plaintiff is disabled in any manner and, therefore, the court does not consider the statutes applicable to plaintiff's claims. The first paragraph also refers to the section of the Civil Rights of Institutionalized Persons Act that requires exhaustion of administrative remedies. Finally, the first paragraph contains a number of statutory citations without references to the particular act and which are illegible. Having reviewed plaintiff's complaint, the court construes it as raising claims pursuant to 42 U.S.C. § 1983 with supplemental state law claims.[3]

---

[2]An order was entered and placed in three cases wherein Biggins had prepared and signed pleadings for other inmates. Plaintiff and Biggins were placed on notice that future documents signed by Biggins will be docketed, but not considered by the court. (*See* D.I. 10)

[3]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

-5-

## A. Access to the Courts

Plaintiff alleges that, while awaiting trial, he attempted to obtain information from the prison law library but he may only receive legal services through written requests. The claim is raised against defendants Michael Little ("Little"), Michael Costello ("Costello"), James Scarborough ("Scarborough"), David Pierce ("Pierce"), Christopher Klein ("Klein"), and Perry Phelps ("Phelps"). (D.I. 3, ¶¶ 18-22)

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court").

It is evident in reading plaintiff's complaint that he was provided access to the courts; he need merely submit a written request. In addition, plaintiff refers to a criminal matter and, as evidenced by his amendment adding claims against assistant public defender Paul S. Swierzbinski ("Swierzbinski"), he is represented by counsel. (*See* D.I. 9) Where an inmate is represented by counsel, his right of access to the courts is satisfied as a matter of law. *Lamp v. Iowa,* 122 F.3d 1100, 1106 (8th Cir. 1997) ("For, once the State has provided a petitioner with an attorney in postconviction proceedings,

it has provided him with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'") (quoting *Lewis v. Casey,* 518 U.S. 343, 356 (1996)); *Schrier v. Halford,* 60 F.3d 1309, 1313-1314 (8th Cir. 1995) (having appointed counsel is one way in which the State can shoulder its burden of assuring access to the courts); *Annis v. Fayette Cnty. Jail,* Civ. No. 07-1628, 2008 WL 763735, at *1 (W.D. Pa. Mar. 20, 2008); *Sanders v. Rockland Cnty. Corr. Facility*, Civ. No. 94 3691, 1995 WL 479445, at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); *Williams v. Vaughn,* No. 90-5617, 1991 WL 34429, at *4 (E.D. Pa. March 12, 1991) ("Thus, [plaintiff-inmate] was not actually injured by any inability to gain access to the law library since he ultimately obtained representation."). For the above reasons, plaintiff's access to the courts claim fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A.[4]

## B. Medical and Vision Needs

Plaintiff has sarcoidosis.[5] He informed defendants Dr. Louise Derosiers ("Dr. Derosiers") and Correct Care Solution, Inc. ("CCS") of the medication administered to him for treatment of the condition prior to his confinement. Plaintiff also submitted sick call slips for pain management and treatment of the condition but, as of the filing of the

---

[4]Plaintiff alleges that, as a pretrial detainee seeking law library access, he is treated differently from convicted prisoners. (D.I. 3, ¶¶ 21-24) Given the fact that there was no violation of plaintiff's right to access to the courts, his equal protection claim is moot.

[5]Sarcoidosis is a disease of unknown origin marked by formation of granulomatous lesions that appear especially in the liver, lungs, skin, and lymph nodes. *The American Heritage Stedman's Medical Dictionary* 730 (2d ed. 2004).

-7-

complaint, has received no pain medications or treatment for the disease. (D.I. 3, ¶¶ 25-29)

In addition, plaintiff wears reading glasses. Unknown members of CCS took his wire-frame glasses because they are a security concern. Plaintiff saw an optometrist in February 2011 who prescribed eyeglasses but, as of May 4, 2011, the date plaintiff signed the complaint, the glasses had not been received. Plaintiff alleges that the lack of glasses hampers his reading ability and causes occasional headaches. (*Id.* at ¶¶ 31-34)

As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment affords plaintiff protection for his medical needs claim. *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977); *See also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). When evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

To evaluate a medical needs claim, the court determines if there is evidence of a serious medical need and acts or omissions by prison officials indicating deliberate indifference to those needs. *Id.* at 582. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05. However, "a prisoner

has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000).

With regard to the claim against Dr. Derosiers and CCS, the allegations are sufficient to survive initial screening. The denial of eyeglasses claim, however, is frivolous because the complaint does not relate the conduct (taking plaintiff's eyeglasses) with any named defendant. Accordingly, the court will dismiss the reading glasses claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## C. Supervisory Officials

Plaintiff alleges that defendants Pierce, Klein, and Phelps, as administrative prison officials who supervise, manage, and make policies, violated his constitutional rights by continuing and allowing inadequate medical treatment discussed above in paragraph III.C. It is apparent that plaintiff names Pierce, Klein, and Phelps as defendants based upon their supervisory positions. (D.I. 3, ¶¶ 30, 35)

Liability for deliberate indifference to serious medical needs does not attach to non-medical prison officials (like Pierce, Klein, and Phelps) "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *See also Estate of Chance v. First Corr. Med., Inc.*, 329 F. App'x 340, 343 (3d Cir. 2009) (not published). The complaint does not alleges that Pierce, Klein, or Phelps knew, or had any reason to believe, that prison medical staff were not treating plaintiff.

However, deliberate indifference liability may attach to non-medical prison administrators who fail in their supervisory capacity over medical staff. To establish supervisory liability, a plaintiff must demonstrate: (1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice. *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989); *see also Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (*respondeat superior* liability not available under 42 U.S.C. § 1983; *Estate of Chance*, 329 F. App'x at 343.

In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal* 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained

a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue*.*" *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for

the violation of a plaintiff's constitutional right.[6] *Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at \*5 (M.D. Pa. Apr. 13, 2010).

The allegations against Pierce, Klein, and Phelps are conclusory. Plaintiff provides no specific facts how they allegedly violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Nor do the allegations in the complaint satisfy the *Iqbal* pleading requirements. Accordingly, the court will dismiss the claims against Pierce, Klein, and Phelps as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## D. Search and Seizure

Plaintiff alleges that, since February 8, 2011, he has been subjected to harassing shakedowns, cell searches, and strip searches on an almost daily basis. On March 13, 2011, plaintiff argued with defendants C/O Burris ("Burris"), C/O Stoddart ("Stoddart"), Sgt. Beckles ("Beckles"), and Sgt. Deallie ("Deallie") after his cell had been searched for the fourth time that week. Plaintiff alleges defendants' actions violated his Fourth Amendment right against illegal search and seizure. Following the argument, plaintiff received disciplinary infractions for disorderly or threatening behavior, disrespect, and failing to obey an order, was found guilty and, on March 28, 2011, sanctioned to fifteen

___

[6]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

-12-

days in isolation. The findings of guilt and sanctions were upheld on appeal. Plaintiff received a second disciplinary write-up on March 13, 2011, discussed below at paragraph III.G. (D.I. 3 at 5, ¶¶ 30-34, 45)[7]

In 2009, plaintiff asserted his Fifth Amendment right against self-incrimination during a Family Court proceeding related to the crimes for which he is now charged.[8] He alleges that defendant Detective Dan Wright ("Wright") was aware of the 2009 proceedings prior to submitting a probable cause affidavit to obtain a search warrant for a sample of plaintiff's DNA. Plaintiff was arrested by Wright on February 8, 2011. Later, Wright served the search warrant for plaintiff's DNA. Plaintiff alleges that Wright and defendant Delaware State Police ("State Police") violated his constitutional rights by using "unjustifiable tactics to secure" his DNA "without exigent circumstances or special governmental needs beyond those of normal law enforcement." (D.I. 3, ¶ 48-51, 53)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Prisoners, however, have no legitimate expectation of privacy. See Hudson v. Palmer, 468 U.S. 517, 527-

---

[7]The complaint contains two sets of numbered paragraphs 30 through 35, with the different allegations found at pages four and five of the complaint. The second set of number paragraphs 30 through 35 will be cited as "D.I. 3 at 5, ¶ __".

[8]Plaintiff is charged with thirty counts of rape in the second degree. (Thorpe v. Phelps, Civ. No. 11-412-SLR, D.I. 3, sealed ex. B)

28, 530 (1984) (A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.); *see also Bell v. Wolfish,* 441 U.S. 520, 558-560 (1979) (invasive body searches of pretrial detainees do not violate the Fourth Amendment as long as the searches are related to a legitimate goal or interest); *Florence v. Board of Chosen Freeholders of County of Burlington,* 621 F.3d 296 (3d Cir. 2010) (routine strip searches of all arrestees upon jail admission does not violate Fourth Amendment).

Courts utilize a balancing test to weigh the need for a particular strip search against the invasion of personal rights that the search entails. *Bell,* 441 U.S. at 539. Important factors for the court to consider include the level of intrusion, the manner in which the search was conducted, the justification for the search, and the place where the search was performed. *Id.* Moreover, blanket strip searches, without a reasonable and particularized suspicion, violate a pretrial detainee's due process rights under the Fourteenth Amendment. *Id.* In addition, searches must be conducted in a professional and reasonable manner. *Id.* at 560.

Here, plaintiff is not complaining about routine shakedowns or cell searches, which generally are permissible given the legitimate interest in maintaining security in a corrections facility. Instead, plaintiff alleges that he was subjected to harassing and

-14-

repeated shakedowns, cell searches, and strip searches. Liberally construing the complaint, as the court must, plaintiff's claim are sufficient to survive the court's initial screening.

With regard to Wright, the allegations are that Wright sought, and received, a search warrant after making application. A "warrant primarily serves to protect an individual from an unreasonable seizure." U.S. CONST. amend. IV. There may be an unreasonable search if the warrant was not supported by probable cause or if reliance upon it was unreasonable. *See Steagald v. United States*, 451 U.S. 204, 212 (1981); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). Here, there are no allegations that Wright lacked probable cause to obtain the warrant for a DNA sample or that his reliance upon the warrant was unreasonable. Plaintiff merely takes exception to the "tactics" used to secure his DNA. The claim against Wright and the State Police is frivolous and will be dismissed pursuant to pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## E. Excessive Force

On March 13, 2011, plaintiff began a hunger strike. When plaintiff would not allow correctional officers to leave his food tray on the cell window flap, defendant Beckles maced plaintiff. The macing caused vision loss and facial irritation. Plaintiff alleges the macing constitutes excessive force and assault and battery. Following the incident, plaintiff was taken to isolation where he remained for the next fifteen days. He received a disciplinary write-up for this incident and was found guilty. (D.I. 3 at 5, ¶¶ 35-42)

Excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment. *Sylvester v. City of Newark,* 120 F. App'x 419, 423 (3d Cir. 2005) (not published). For a Due Process violation, plaintiff must show that the force used amounts to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control. *See Fuentes v. Wagner,* 206 F.3d 335 (3d Cir. 2000) (Eighth Amendment's cruel and unusual punishment standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance).

The use of mace does not, in itself, amount to a constitutional violation. *See, e.g., Banks v. Mozingo,* No. 10-2259, 2011 WL 1461518, at *2 (3d Cir. Apr. 18, 2011) (slip op.) (citing *Couden v. Duffy,* 446 F.3d 483, 505–06 (3d Cir. 2006) (the use of mace does not, in itself, violate the Eighth Amendment). Here, plaintiff alleges that, when he did not comply with Beckles' order, he was maced. The allegations suffice to survive initial screening since it is unknown whether Beckles was, or was not, justified in using some amount of force to compel plaintiff to comply with his order.

## F. Pretrial Punishment

With regard to his claims of unconstitutional punishment while awaiting trial, plaintiff refers to the actions of Cpt. Bruce Burton ("Burton")[9] and defendants Lt. Daum ("Daum") and Cpt. Rispoli ("Rispoli"), and their roles in holding disciplinary hearings, finding plaintiff guilty of disciplinary violations, and sanctioning plaintiff. As a result of his two March 13, 2011 disciplinary write-ups, plaintiff remained in isolation from March 13, 2011 through March 27, 2011. He complains that the conditions were cold, there

---

[9]Burton is not a named defendant.

was excessive lighting, and strip and cell searches were conducted six times daily. (D.I. 3, at 5 ¶¶ 33, 34, 42, 43)

Unlike sentenced inmates, pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. *Bell,* 441 U.S. at 535-36. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* at 538. Therefore, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539. In the absence of substantial evidence in the record to indicate that the officials have exaggerated their response, courts should ordinarily defer to the expert judgment of corrections officials in determining whether restrictions or conditions are reasonably related to the government's interest in maintaining security and order and operating the institution in a manageable fashion, given that said considerations are peculiarly within the province and professional expertise of corrections officials. *Id.* at 540 n.23.

Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll,* 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious"

and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citations omitted).

It is clear from the allegations in the complaint and supporting exhibits that plaintiff's claims do not satisfy the objective component of his substantive due process claim. In each instance, plaintiff was disciplined as a result of his conduct. Plaintiff's allegations and exhibits evidence that the restrictions imposed upon him were reasonably related to the legitimate goal of maintaining security and order in the prison. Nor does plaintiff allege a purposeful intent on the part of prison officials to punish plaintiff. For these reasons, the court will dismiss as frivolous the unlawful punishment claim pursuant to pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## G. Conspiracy

Plaintiff alleges that Daum, Rispoli, Karen Hawkins ("Hawkins"), Burton, Costello, Scarborough, Pierce, Klein, and Phelps as supervisors, managers, and policy makers conspired to violate his constitutional rights. (D.I. 3, ¶ 47) To state a conspiracy claim under § 1983, plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). In addition, there must be evidence of actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). A § 1983 conspiracy claim only arises, however, when there has been an actual deprivation of a right. *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987); *see also Dixon v. City of*

-18-

Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990) (recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability). Accord Perano v. Township of Tilden, No. 10-2393, 2011 WL 1388381 (3d Cir. Apr. 13, 2011) (slip op.)

The conspiracy claim is deficiently pled and conclusory. In addition, it does not allege that defendants acted in concert with others nor does it allege a constitutional violation. Therefore, the conspiracy claim will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## H. Deficient Pleading

The caption of the complaint and the listing of defendants refer to the VCC and James Fowler ("Fowler") as defendants. A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980)); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)). Other than being named as a defendant, there are no allegations directed towards the VCC and Fowler. Accordingly, the court finds the claims against them frivolous, and they will be dismissed as defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[10]

---

[10]In addition, the VCC is immune from suit by reason of the Eleventh Amendment. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984); Edelman v. Jordan, 415 U.S. 651 (1974); MCI Telecom. Corp. v. Bell Atl. of Pa., 271 F.3d 491, 503 (3d Cir. 2001); Brooks-McCollum v. Delaware, 213 F. App'x 92, 94 (3d Cir. 2007) (not published).

## I. State Actor

Plaintiff adds assistant public defender Swierzbinski as a defendant. It appears that plaintiff is not satisfied with Swierzbinski's legal assistance. (See D.I. 9) Swierzbinski is a public defender for the State of Delaware. Public defenders do not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in criminal proceedings. Polk County v. Dodson, 454 U.S. 312 (1981). Accordingly, the claim against Swierzbinski is dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## J. Motion to Show Cause

Plaintiff moves the court for defendants to answer his complaint. (D.I. 5) The motion will be denied. The Federal Rules of Civil Procedure provide a time-line for the filing of an answer or responsive motion to the complaint.

## K. Transfer

Plaintiff is unhappy with the conditions of confinement at the VCC. His letter to the court seeks an order for the DOC to provide him more freedom or transfer him to another institution. (D.I. 9) The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. Walls v. Taylor, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing Brathwaite v. State, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. Olim v. Wakinekona, 461 U.S. 238, 251 (1983).

Accordingly, the court will deny plaintiff's motion for an order directing defendants to provide him more freedom or transfer him to a different institution. (D.I. 9)

## IV. CONCLUSION

For the above reasons, the court finds that the complaint states cognizable and non-frivolous claims for violation of the Fourth Amendment against defendants Burris, Stoddart, Beckles, and Deallie; an excessive force claim against Beckles; and medical needs claims against Dr. Derosiers and CCS. The court will dismiss all other claims against the remaining defendants as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A. Finally, the court will deny plaintiff's motions.

An appropriate order will issue.